1  Doug Tilley, Esq. (SBN: 265997)
   tilley@braunhagey.com
2  Chelsea Tirgardoon, Esq. (SBN: 340119)
   tirgardoon@braunhagey.com
3  BRAUNHAGEY & BORDEN LLP
   747 Front Street, 4th Floor
4  San Francisco, CA 94111
   Telephone: (415) 599-0210
5  Facsimile: (415) 276-1808

6  Tabitha Cohen, Esq., *pro hac vice* forthcoming
   cohen@braunhagey.com
7  BRAUNHAGEY & BORDEN LLP
   118 W. 22nd Street, 12th Floor
8  New York, NY 10011
   Telephone: (646) 829-9403
9  Facsimile: (646) 403-4089

10 ATTORNEYS FOR PLAINTIFF
   INTUITIVE SURGICAL OPERATIONS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUITIVE SURGICAL OPERATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN LAM and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 3:24-cv-7427<br><br>**COMPLAINT FOR (1) MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF DEFENSE OF TRADE SECRETS ACT, 18 U.S.C. §§ 1836, *ET SEQ.*; (2) BREACH OF CONTRACT; AND (3) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Intuitive Surgical Operations, Inc. ("Intuitive" or "Plaintiff") hereby brings this Complaint against Defendant Jonathan Lam ("Defendant") and DOES 1 through 10, inclusive. Intuitive alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

**INTRODUCTION**

1. This lawsuit arises from Defendant Jonathan Lam's misappropriation of trade secrets and highly confidential and sensitive information owned by Intuitive, his former employer, in violation of contract and substantive law.

2. Plaintiff Intuitive is the developer and manufacturer of advanced surgical robotic platforms, including the *da Vinci* Surgical System and the ION Robotic Bronchoscopy System. Intuitive markets and sells its products throughout the United States and the world. Intuitive has invested substantial time, money, and human resources to develop its proprietary technology, manufacturing plans, third-party vendor relationships, and import and export compliance protocols so that Intuitive can improve medical outcomes for patients across the United States and around the globe.

3. Intuitive zealously safeguards its trade secrets and confidential information through a battery of technological, physical, and other measures. As but one example, all Intuitive personnel (including Defendant) are required as a condition of their employment to sign contracts committing to protect Intuitive's trade secrets and other intellectual property at all times (including after their employment ends), and to return all company property, documents, and information upon separation from Intuitive.

4. Defendant Jonathan Lam was employed by Intuitive from January 2019 until October 11, 2024. He worked in Intuitive's international supply chain logistics and compliance organization. Through his work for Intuitive, Defendant was exposed to a substantial volume of highly valuable Intuitive trade secret, confidential, and proprietary information.

5. Defendant was advised on September 10, 2024 that Intuitive was eliminating his position and that his employment would end after a specified transition period so he could hand off ongoing projects. Defendant, however, ceased performing any material work on behalf of

Intuitive.  He instead sent **hundreds** of emails and attachments from his Intuitive email account to his personal Gmail account.

6. Intuitive's sophisticated security apparatus detected Defendant's theft.  Intuitive's information security personnel quickly determined that Defendant misappropriated a substantial volume of highly confidential Intuitive information, including without limitation attorney-client privileged legal materials; documents reflecting operational strategies, priorities, and roadmaps; documents memorializing customized processes for performing certain critical tasks; contracts with third parties; spreadsheets setting forth whether Intuitive makes certain product components or sources them from third parties (and the names and contact information for those suppliers); pricing information; actual and forecasted usage of and demand for its products; and other competitively sensitive information.

7. Intuitive restricted Defendant's access to company resources promptly upon discovering his theft and put him on administrative leave, effective immediately.  When Intuitive notified Defendant that he was being placed on leave because he had unlawfully exfiltrated confidential company materials, Defendant falsely claimed that he was only backing up "personal" documents.  Intuitive personnel reiterated that the company documents Defendant took included highly sensitive materials explicitly labeled as Intuitive confidential information.  Defendant responded only that "I already shared and I have nothing further to say."

8. Through outside counsel, Intuitive demanded that Defendant destroy all Intuitive confidential information in his possession, return his company laptop and all other physical property, disclose under penalty of perjury the extent to which Defendant used and/or disclosed Intuitive's confidential information, and allow Intuitive to forensically verify these facts and that all Intuitive property was permanently removed from Defendant's possession.  Defendant has not agreed to do any of the foregoing.

9. Intuitive had hoped Defendant would promptly and voluntarily agree to respect his duties under contract and substantive law.  Given Defendant's failure to substantively, however, Intuitive must resort to the Courts to re-secure its trade secrets and other property as well as prevent any further harm to Intuitive.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's trade secret claim pursuant to 18 U.S.C. §§ 1836, *et seq.* and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Intuitive's other claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this district under 28 U.S.C. § 1391 and 15 U.S.C. § 22 because a "substantial part of the events or omissions" on which the claim is based occurred in this district.

## THE PARTIES

12. Plaintiff Intuitive Surgical Operations, Inc. is a Delaware corporation with its principal place of business in Sunnyvale, California.

13. Defendant Jonathan Lam is an individual residing in San Francisco, California.

14. Intuitive is informed and believes and thereon alleges that DOES 1 to 10 are jointly and severally responsible for, induced and/or encouraged, aided and abetted, and/or have ratified Defendant's tortious and otherwise unlawful conduct described herein. Upon information and belief, each of the Defendants, including DOES 1 through 10, was the agent, servant, and/or employee of all other Defendants and in doing the things alleged herein was acting within the course and scope of such agency or employment and with the consent and permission of the remaining Defendants. Intuitive reserves the right to amend this Complaint as appropriate when Intuitive learns the identities and roles of DOES 1 to 10—information that is largely, if not entirely, in Defendant's sole possession.

## FACTS

**I.  INTUITIVE IS A PIONEER IN SURGICAL ROBOTICS AND ZEALOUSLY PROTECTS ITS INTELLECTUAL PROPERTY**

15. Intuitive's advanced surgical robotics platforms have revolutionized minimally invasive surgical care by enhancing precision, dexterity, and control, enabling surgeons to perform complex procedures with smaller incisions and reduced risks. Intuitive's technology integrates state-of-the-art robotics, computer vision, and 3D high-definition visualization to deliver improved patient outcomes, reduce recovery times, and lower the risk of complications.

16. Intuitive invests significant time, money, and personnel to develop technical, strategic, logistical, and other operational information to drive the company's innovations.

Through its substantial investments, Intuitive generates highly valuable confidential information, including without limitation technical and research and development documents, regulatory and other strategic plans and roadmaps, customized processes to perform export and other critical tasks, internal memoranda analyzing various operational and strategic issues (including legal analyses prepared by company counsel), actual and prospective customer and vendor lists, associated negotiation and targeting information, vendor contracts, rosters of product component make-or-buy decisions, and associated pricing and other considerations.

17. Such information is a substantial driver of Intuitive's commercial success. It allows the company to navigate complex regulatory landscapes; optimize production, manufacturing, and distribution; shape strategic direction; and otherwise compete in the increasingly-crowded field of surgical robotics. Such information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public or any person or entity who can obtain economic value from the disclosure or use of the information. Unauthorized exposure of this information would gravely harm Intuitive, including by revealing valuable insights into Intuitive's product development, operations, and strategies, thereby allowing others to unfairly compete with Intuitive.

18. Given the value of its trade secrets and confidential information, Intuitive deploys extensive technological, physical, and other measures to ensure their secrecy and security.

19. For example, Intuitive deploys robust and multi-layered network security protocols. As a starting point, Intuitive controls access to its network and servers via virtual private network (VPN) technology. Users are required to log into Intuitive's secure VPN in order to access the company's network. Once inside, employees are under strict controls as to who can access (or even ascertain the existence of) certain files and how they may do so. Intuitive also maintains separate controlled repositories relating to different aspects of the company's business and operations. Access to each such repository is strictly controlled and requires special approval. Only personnel with a "need to know" are granted access.

20. In addition, Intuitive deploys several forms of network monitoring, including digital loss prevention technology to track and control network activity. Intuitive utilizes, for example,

various information security tools to monitor file access through local and external applications, the transmission of information to certain external domains (including without limitation gmail.com), and other activities conducted on or through Intuitive's resources.

21. Intuitive also generally forbids the use of removable storage devices, such that employees may transmit data to such devices only after requesting and receiving special permissions following a security review.

22. Intuitive further safeguards its trade secrets and other confidential information through proper human resource management and practices. All personnel are required, for example, to sign contracts through which they commit to always protect Intuitive's trade secrets and confidential information, and to never share or use except as explicitly authorized, even after their employment ends. Employees must also contractually commit to return all Intuitive property, documents, and information (whether physical or electronic) upon termination of their employment.

23. Intuitive also thoroughly educates its workforce on the critical importance of safeguarding the company's intellectual property. Intuitive provides its personnel with formal written policies addressing these topics, for instance, and also mandates that employees complete intellectual property protection trainings when they onboard and periodically thereafter. These trainings cover, among other topics, Intuitive's policies and guidelines governing acceptable access to and use of information technology assets (e.g., networks and computers) as well as the proper storage, handling, and transfer of trade secret and confidential information, including in dealing with customers and suppliers.

24. When employees leave the company (voluntarily or otherwise), Intuitive reiterates in writing their ongoing duty to protect and preserve Intuitive's confidential information as well as their obligation to return all company property, documents, data, and other information.

## II. DEFENDANT JOINS INTUITIVE AND COMMITS TO SAFEGUARD INTUITIVE'S TRADE SECRETS AND OTHER CONFIDENTIAL INFORMATION

25. Defendant Lam's employment at Intuitive commenced in January 2019. As a condition of his employment, Defendant executed a Proprietary Rights Agreement, dated January 13, 2019 ("Employment Agreement").

26. By signing his Employment Agreement, Defendant committed to protect and preserve Intuitive's confidential information and to never use or share any such information except as explicitly authorized by the Company. In particular, Defendant contractually agreed that:

> All Confidential Information [] learned or created by Employee during Employee's employment is and shall be the sole property of the Company and its assigns. ***At all times during Employee's employment, and thereafter, Employee will hold in strictest confidence and will not disclose, use, lecture upon, or publish any of the Company's Confidential Information*** [] unless an officer of the Company at the Vice President level or above expressly authorizes the disclosure, use, lecture, or publication in writing.

27. Defendant's Employment Agreement defined "Confidential Information" as including Intuitive's trade secrets and all other proprietary information relating to Intuitive's technology, products, and business. By way of example, Defendant specifically agreed to protect as confidential any "non-public information, or public information compiled in a manner that provides an advantage to the Company []," that "relat[es] to" current products, internal "processes" and "policies," "manufacturing information, marketing plans, business plans, budgets, strategies, financial information, sales information, pricing information, pricing methodology, … supplier information, vendor information, and employee information."

28. Defendant further committed that:

> ***At the conclusion of Employee's employment, Employee will return to the Company all information and property*** that Employee received from the Company, or that Employee received on behalf of the Company, or that Employee created while working for the Company, ***which relates to the Company business*** (other than documents regarding Employee's individual compensation, such as pay stubs and benefit plan information). ***This requirement pertains to all information that is in Employee's possession, custody, or control, and includes both paper documents and electronically stored information***, which must be returned in all forms in which it exists, without alteration or deletion.

29. Defendant further agreed that in the event he failed to comply with these obligations, "the Company has the right to enforce [them] by injunction, specific performance, or other equitable relief, and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement."

30. As an additional condition of his employment, Defendant was required to review and agree to abide by company policies. Defendant did so at his onboarding and periodically thereafter. The policies Defendant received and acknowledged include those entitled "Acceptable Use of IS [Intuitive Surgical] Resources Policy[,]" "IS Security Incident Response[,]" and "Strategic Business Process, [Intuitive Surgical] Access Control Policy."

31. Defendant was also required to complete mandatory trainings, including on how to recognize and protect Intuitive's trade secrets and other confidential information. Defendant did so at his onboarding and periodically thereafter. The trainings Defendant completed include those entitled "Confidential Information Training[,]" "Non-Disclosure Agreement (NDA) Module[,]" "Spear Phishing Attacks[,]" "Malicious Insider Threat[,]" "IT Security Essentials for Management and above[,]" "Security Essentials – Executive[,]" and "IT Security Advanced Phish Finder: Spotting Warning Signs."

32. Defendant worked as a Senior Manager of Global Trade Compliance in Intuitive's international supply chain and logistics organization. In his role, Defendant had access to a substantial volume of Intuitive trade secrets and other confidential information. These include materials relating to which components of Intuitive's products are manufactured in-house or sourced externally, the vendors from whom Intuitive procures equipment not manufactured by the company and the associated pricing and other terms, materials evidencing roadmaps and future plans concerning export-related strategies, customized processes for performing critical tasks, analyses prepared by third-party consultants and vendors to help further refine Intuitive's operations, privileged communications from Intuitive's legal counsel regarding import and export requirements, and other highly sensitive protected information.

### III. DEFENDANT LEARNS THAT HIS EMPLOYMENT WILL END, STEALS INTUITIVE TRADE SECRETS AND CONFIDENTIAL INFORMATION, THEN LIES TO COVER IT UP

On September 10, 2024, Defendant was informed that Intuitive had decided to eliminate his position and that his last day with the company would be November 11, following a transition period during which Defendant could hand off ongoing projects. Intuitive followed up that same day with a written "Notice of Separation[.]" That Notice contained, among other information, a written "[r]eminder of your ongoing obligations to Intuitive after departure (per the attached Proprietary Rights Agreement signed at onboarding)[.]" That reminder reiterated (with emphases added) that:

- "Employee will not disclose, use, lecture upon, or publish any of Intuitive's confidential information …"

- "*Employee will return to Intuitive all information and property received from Intuitive, or that Employee received on behalf of Intuitive, or that Employee created while working at Intuitive, which relates to Intuitive's business* (other than documents regarding Employee's individual compensation, such as pay stubs and benefit plan information). This requirement pertains to *all information that is in Employee's possession*, custody, or control, and includes both paper documents and *electronically stored information.*"

- "*Employee will not print or make any electronic or paper copies of any files, documents, or other work product prior to Employee's departure* unless expressly authorized by Employee's manager to complete or transition work."

33. Intuitive's written Notice also instructed Defendant to "RETURN ALL HARDWARE AND [INTUITIVE] PROPERTY TO YOUR MANAGER[,]" including his company-issued "[l]aptop[.]"

34. Defendant could have immediately terminated his employment with Intuitive at any time. He did not. Defendant did, however, cease performing any material work for the company. He frequently failed to respond to emails, for example, or to attend scheduled one-on-ones with his direct manager.

35. On October 7, 2024—just weeks after Defendant learned that his tenure at Intuitive would soon end—Defendant sent a large volume of data from his Intuitive email account to his personal Gmail account.

36. Defendant's transmissions were quickly detected by one of Intuitive's automated threat detection tools, which alerted Intuitive's information security personnel. That security team queried Defendant's outbound emails, found that Defendant had sent **hundreds** of emails to his personal Gmail account, and determined that many of them reflected Intuitive confidential information. The information security team notified Defendant's direct manager and Intuitive Human Resources so they could determine appropriate next steps, blocked Defendant's ability to send emails to his personal Gmail account, and further restricted Defendant's access to other company resources.

37. Defendant subsequently attempted to send numerous additional messages and files to his personal Gmail. Those transmissions were blocked by Intuitive's security response.

38. On October 8, 2024, Intuitive placed Defendant on immediate and unpaid administrative leave. Intuitive so notified Defendant and explained that they had discovered his mass-theft of confidential company materials. Defendant falsely claimed that he was merely backing up "personal" documents. Intuitive pressed Defendant, noting that he sent himself documents marked as highly confidential to Intuitive. Defendant offered no meaningful response, stating only that "I already shared and I have nothing further to say."

## IV. INTUITIVE'S EFFORTS TO RE-SECURE THE TRADE SECRET AND CONFIDENTIAL MATERIALS STOLEN BY DEFENDANT

39. Beginning on October 9 (two days after Defendant's mass-exfiltration), Intuitive demanded via outside counsel that Defendant destroy all Intuitive confidential information in his possession, return all physical property (including his company-issued laptop), disclose the extent to which Defendant used and/or disclosed Intuitive's confidential information, and allow Intuitive to corroborate Defendant's assurances and forensically verify that all Intuitive property was permanently removed from his possession.

40. Defendant responded that he wished to respond through counsel and requested additional time to retain an attorney. Notwithstanding Intuitive's repeated demands, Defendant has not provided any explanation for his actions, returned (or even offered to return) any company property, acknowledge his proven falsehoods, or otherwise address Intuitive's concerns. Defendant

did claim (albeit never under penalty of perjury despite Intuitive's repeated demands) that he would not share any Intuitive information except with counsel. In hopes that Defendant would voluntarily comply with his obligations—and in explicit reliance on his written representations—Intuitive agreed to give Defendant additional time to engage counsel.

41. It has been two weeks since Intuitive's first demand for compliance, however, and neither Defendant nor anyone acting on his behalf has even offered to return Intuitive's stolen documents and laptop, attempted to explain his brazen misconduct, or to otherwise respect Intuitive's unambiguous legal rights.

42. Notwithstanding Intuitive's efforts to secure his voluntary compliance with the law, Defendant continues to retain stolen Intuitive trade secrets, confidential information, and other property. He remains a grave threat of further misappropriation. Given his outrageous theft, dishonesty, and stonewalling, Intuitive has no choice but to bring this action.

## **CAUSES OF ACTION**

### **First Cause of Action**
**Misappropriation of Trade Secrets in Violation of the Defense of Trade Secrets Act, 18 U.S.C. §§ 1836,** *et seq.*

43. Intuitive repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

44. Intuitive is the owner of certain trade secret and confidential information, as alleged above. The information that Defendant misappropriated constituted trade secrets at the time of the misappropriation and remains trade secrets today. This information derives substantial economic value from not being generally known to, and not being readily ascertainable through proper means by, the public or any person or entity who can obtain economic value from the disclosure or use of the information. Intuitive has taken reasonable efforts to maintain the secrecy of its trade secrets, including but not limited to the measures detailed above.

45. At the least, Defendant acquired Intuitive's trade secrets through improper means, including at least by mass-exfiltrating Intuitive's confidential and proprietary materials in violation of contract, policy, and applicable law. Intuitive does not and did not consent to Defendant's theft and continuing possession of company trade secrets or confidential information. Defendant's

1  conduct constitutes at least theft as well as breach of a duty to maintain secrecy.  *See, e.g.*, 18
2  U.S.C. § 1839(6) (defining "improper means"); Cal. Lab. C. § 2860 ("Everything which an
3  employee acquires by virtue of his employment, except the compensation which is due to him from
4  his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after
5  the expiration of the term of his employment.").  Upon information and belief, at the time he
6  acquired Intuitive's trade secrets and confidential information, Defendant knew (and certainly had
7  reason to know) that he had acquired the same by improper means.

8      46.    Intuitive is further informed and believes that Defendant did and/or intends to
9  improperly use and/or further disclose at least some of Intuitive's trade secret information.  He
10 mass-exfiltrated a staggering volume of highly sensitive Intuitive files in open violation of his
11 contract, Intuitive policy, and applicable law.  Indeed, he did so *after* learning that his tenure at
12 Intuitive would soon end, *after* deciding not to perform transition work for the company, and *after*
13 being told in writing that he must "not [] make any electronic [] copies of any files … prior to
14 Employee's departure[.]"  The timing and scope of Defendant's misappropriation, his dishonesty,
15 and his lack of contrition or accountability create a strong inference that he intends to imminently
16 use and disclose what he pilfered to pursue new employment and to aid any new employer in
17 improving its own supply chain and logistics operations—potentially even in direct competition
18 with Intuitive.

19     47.    As a result of Defendant's misappropriation of its trade secret and confidential
20 information, Intuitive is entitled to recover damages for its actual losses, as well as any additional
21 damages attributable to the unjust enrichment of Defendant or royalty payments, in amounts to be
22 proven at trial.

23     48.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), in light of Defendant's actual and threatened
24 misappropriation, Intuitive is further entitled an injunction (a) restraining Defendant and any
25 persons or entities acting in concert with him (including without limitation DOES 1 through 10)
26 from possessing, retaining, soliciting, accessing, using, disclosing, leveraging, and/or interacting in
27 any manner any non-public Intuitive information; and (b) directing Defendant any his collaborators
28 to deliver to Intuitive all company property in their possession, custody, or control, as well as any

work-product or derivative works reflecting and/or generated as a result of their possession of Intuitive's trade secret and otherwise confidential information.

49. On information and belief, if Defendant and his co-conspirators are not enjoined, they will disclose and/or use Intuitive's trade secrets and confidential information for their own benefit and to Intuitive's detriment and may disseminate those trade secrets to other third parties.

50. Defendant's misappropriation of Intuitive's trade secrets and confidential information was intentional, knowing, willful, malicious, fraudulent, and oppressive, warranting an award of exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

51. Pursuant to 18 U.S.C. § 1836(b)(3)(D), Intuitive demands attorneys' fees and costs, including expert witness fees, as a result of Defendant's willful and malicious misconduct.

**Second Cause of Action**
**Breach of Contract**

52. Intuitive repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

53. Intuitive and Defendant Lam entered into a valid and binding contract, namely, the Proprietary Rights Agreement, dated January 13, 2019.

54. Intuitive did all, or substantially all, of the significant things the contract required of it, and/or Intuitive's performance was excused.

55. Defendant failed to honor its own obligations under the parties' contract. He has unlawfully refused, for example, to return Intuitive's trade secrets, confidential information, and other property. Moreover, on information and belief, Defendant has improperly used and/or disclosed Intuitive's Confidential Information in violation of the parties' contract.

56. Defendant's breach resulted in, and was a substantial factor in causing, substantial harm to Intuitive, including through causing Intuitive to lose exclusive control over its trade secrets and other Confidential Information.

57. Intuitive is entitled to monetary and other relief in an amount to be proven at trial.

58. Pursuant to the terms of Defendant's Proprietary Rights Agreement, Intuitive is further entitled an injunction (a) restraining Defendant and any persons or entities acting in concert

with him (including without limitation DOES 1 through 10) from possessing, retaining, soliciting, accessing, using, disclosing, leveraging, and/or interacting in any manner any non-public Intuitive information; and (b) directing Defendant any his collaborators to deliver to Intuitive all company property in their possession, custody, or control, as well as any work-product or derivative works reflecting and/or generated as a result of their possession of Intuitive's trade secret and otherwise confidential information.

### Third Cause of Action
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Pleaded in the Alternative to Intuitive's Second Cause of Action)

59. Intuitive repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

60. Intuitive and Defendant Lam entered into a valid and binding contract, namely, the Proprietary Rights Agreement, dated January 13, 2019.  By operation of law, that contract includes an implied covenant of good faith and fair dealing.

61. Intuitive did all, or substantially all, of the significant things the contract required of it, and/or Intuitive's performance was excused.

62. To the extent Defendant performed his obligations under the parties' contract and/or his performance was excused (each of which notions Intuitive denies), Defendant acted unreasonably and unfairly and prevented Intuitive from receiving the benefits of the parties' contract, thus breaching the implied covenant of good faith and fair dealing.

63. Defendant's breach of the implied covenant resulted in, and was a substantial factor in causing, substantial harm to Intuitive, including through causing Intuitive to lose exclusive control over its trade secrets and other Confidential Information.

64. Intuitive is entitled to monetary and other relief in an amount to be proven at trial.

65. Pursuant to the terms of Defendant's Proprietary Rights Agreement, Intuitive is further entitled an injunction (a) restraining Defendant and any persons or entities acting in concert with him (including without limitation DOES 1 through 10) from possessing, retaining, soliciting, accessing, using, disclosing, leveraging, and/or interacting in any manner any non-public Intuitive

information; and (b) directing Defendant any his collaborators to deliver to Intuitive all company property in their possession, custody, or control, as well as any work-product or derivative works reflecting and/or generated as a result of their possession of Intuitive's trade secret and otherwise confidential information.

## PRAYER FOR RELIEF

WHEREFORE, Intuitive prays that the Court issue the following relief:

A. Enter preliminary and permanent injunctive relief enjoining Defendant and any other persons or entities acting in concert with him (including without limitation DOES 1 through 10) from possessing, retaining, soliciting, accessing, using, disclosing, leveraging, and/or interacting in any manner any non-public Intuitive information;

B. Order Defendant and any persons or entities acting in concert with him (including without limitation DOES 1 through 10) to deliver to Intuitive all company property in his or their possession, custody, or control, as well as any work-product or derivative works reflecting and/or generated as a result of their possession of Intuitive's trade secret and otherwise confidential information;

C. Award Intuitive compensatory damages in an amount to be determined at trial;

D. Order disgorgement of all revenues, profits, enrichment, or other benefits that Defendant(s) received as a result of his wrongful conduct;

E. Award Intuitive punitive and exemplary damages;

F. Award Intuitive its reasonable attorneys' fees and costs; and

G. Award all such other and further relief as the Court may deem just, proper, and equitable.

//
//
//
//
//
//

Dated: October 24, 2024                    BRAUNHAGEY & BORDEN LLP

                                           By: */s/ Doug Tilley*
                                                Doug Tilley
                                                Tabitha Cohen
                                                Chelsea Tirgardoon

                                           *Attorneys for Plaintiff Intuitive Surgical Operations, Inc.*

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff Intuitive Surgical Operations, Inc. hereby demands a jury trial of all claims and causes of action triable before a jury.

Dated: October 24, 2024                    BRAUNHAGEY & BORDEN LLP

                                           By: */s/ Doug Tilley*
                                                Doug Tilley
                                                Tabitha Cohen
                                                Chelsea Tirgardoon

                                           *Attorneys for Plaintiff Intuitive Surgical Operations, Inc.*