Doug Tilley, Esq. (SBN: 265997)
tilley@braunhagey.com
Chelsea Tirgardoon (SBN: 340119)
tirgardoon@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

Tabitha Cohen, Esq., (*pro hac vice* forthcoming)
cohen@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W. 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Facsimile: (646) 403-4089

ATTORNEYS FOR PLAINTIFF
INTUITIVE SURGICAL OPERATIONS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUITIVE SURGICAL OPERATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JONATHAN LAM and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 3:24-cv-7427 <br><br> **DECLARATION OF CAMERON SLYE IN SUPPORT OF PLAINTIFF INTUITIVE SURGICAL OPERATIONS, INC.'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR EXPEDITED DISCOVERY** |

I, Cameron Slye, hereby declare as follows:

1. I, Cameron Slye, am employed by Plaintiff Intuitive Surgical Operations, Inc. ("Intuitive"), as its Director, Information Technology Security. I submit this Declaration in support of Intuitive's Motion for a Temporary Restraining Order. The facts set forth in this Declaration are based on my own personal knowledge, following a reasonable and diligent inquiry. I could and would testify competently to such facts if called upon to do so.

2. I have served as Intuitive's Director, Information Technology Security since April 2022. My principal responsibility is to lead Intuitive's security monitoring and incident response team, including by ensuring continuous threat detection, effective incident management, policy implementation, regular security assessments, and appropriate interdepartmental collaboration and coordination.

3. Intuitive takes extensive technological, physical, and other measures to ensure that unauthorized persons may not access, ascertain, or exploit the company's trade secrets and confidential information. For example, Intuitive deploys robust and multi-layered network security protocols. As a starting point, Intuitive controls access its network and servers by using virtual private network (VPN) technology. Users are required to log into Intuitive's secure VPN in order to access the company's network and, once inside, employees are under strict controls as to who can access (or even ascertain the existence of) certain files and how they may do so. Intuitive also maintains separate controlled repositories relating to different aspects of Intuitive's business and operations. Access to each is strictly controlled and requires special approval. Only personnel with a "need to know" are granted.

4. Intuitive deploys several forms of network monitoring, including data loss prevention technology to track and control network activity. Intuitive utilizes, for example, various information security tools to monitor file access through local and external applications, the transmission of information to certain external domains (including without limitation gmail.com), and other activities conducted on or through Intuitive's resources.

5.  Intuitive generally forbids the use of removable storage devices. Employees may transmit data to such devices only after requesting and receiving special permissions following a security review.

6.  On or about October 7, 2024, my team received an automated alert via one of Intuitive's network monitoring and security tools that Defendant had transmitted a substantial volume of data from his Intuitive email account to jonlam2228@gmail.com. Pursuant to Intuitive security protocols, this triggered a human review to evaluate whether Defendant's outbound transmissions may have included any unauthorized exfiltration of Intuitive confidential information. Through that review, my team determined that many of Defendant's outbound transmissions contained material non-public Intuitive information. My team promptly notified Intuitive HR personnel as well as Defendant's direct supervisor, Kornkanok Phutrakul, so that those with greater subject matter knowledge concerning Defendant's duties and the information he exfiltrated could review and take appropriate corrective or other actions. My team also disabled Defendant's ability to send additional emails to his Gmail account and restricted his access to other company resources in order to avoid any further unauthorized use or dissemination of Intuitive confidential information.

7.  After my team disabled Defendant's ability to transmit emails to his Gmail account, Defendant attempted on October 8, 2024 to send additional emails to his Gmail account, including with the subject lines enumerated below. Intuitive's security response successfully blocked these attempted outbound transmissions by Defendant.

- "FW: ███████████████"
- "FW: [EXTERNAL] ███████████████"
- "FW: [EXTERNAL] ███████████████"
- "FW: [EXTERNAL] ███████████████████████████████"
- "FW: ███████████████████████"
- "FW: ███████████████████"
- "FW: ████████████████████████████████"

2

DECLARATION OF CAMERON SLYE IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY

- "FW: [EXTERNAL] RE: ▮▮▮▮"
- "FW: ▮▮▮▮"
- "FW: ▮▮▮▮"
- "▮▮▮▮"
- "RE: ▮▮▮▮"
- "FW: [EXTERNAL] ▮▮▮▮"

8. I understand that Defendant was advised at approximately 3:30 p.m. pacific on September 10, 2024 that Intuitive had determined to eliminate his role.

9. Attached hereto as **Exhibit 1** is a true and correct copy of a report prepared by my team and setting forth the timestamp (pacific time), subject line, and attachment file names for each email Defendant sent to his Gmail account after 3:30 p.m. pacific on September 10, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge following a reasonable and diligent inquiry.

Dated: October 24, 2024

Signed by: *Cameron Slye*
Cameron Slye

---

3

DECLARATION OF CAMERON SLYE IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY